## Case No. 245.

### The ALLIANCE.

[Blatchf. Pr. Cas. 262;[1] 5 Leg. & Ins. Rep. 2.]

District Court, S. D. New York. Dec., 1862.[2]

PRIZE—VIOLATION OF BLOCKADE—CONTRABAND
GOODS—MILITARY EQUIPMENTS.

1. Vessel and cargo seized in the harbor of Beaufort, N. C., on its capture; condemned for these reasons: 1. For violating the blockade in entering Beaufort. 2. For taking on board there an enemy clearance and a cargo, with intent to evade the blockade in coming out, and attempting to come out. 3. For carrying into Beaufort a large supply of military equipments.

[Cited in The Gondar, Case No. 5,526.]

2. The illegality of sailing under an enemy license is legal cause for the forfeiture of a neutral vessel.

[In admiralty. The decree in this case was afterwards reversed by the circuit court. See The Gondar, Case No. 5,528.]

BETTS, District Judge. The vessel and cargo seized in this case were libelled May 17, 1862. A claim in the name of the registered owners, with a test oath made thereto, was filed on the 17th of June thereafter. The defence set up in the claim is an alleged neutral ownership of the vessel and cargo by the claimants, and a denial that the seizure was a lawful capture.

The facts gathered from the ship's papers and the preparatory proofs show that the vessel was of an American build, and was conveyed to and registered in the names of the claimants, British subjects, at Liverpool. February 11, 1861. The vendors to the British owners were Ferguson & Co., a mercantile firm resident in Charleston, S. C., and the vessel had, previous to this sale, been employed by that house in trade to and from Charleston at different periods. One of the members of the firm of Forbes & Co. was also a member of the firm in Liverpool, who acted as agents of the house in Charleston in making the transfer of the vessel to the claimants, and the claimants had been previously clerks in the employ of the vendors; but the sale of the vessel preceded the existing war so long a time as not to expose it per se to the presumption claimed by the libellants, that it was made colorably, and in fraud of the belligerent rights of the United States.

The voyage on which the Alliance was seized commenced at St. John, New Brunswick, in August, 1861. Her destination was first to Beaufort, North Carolina, and thence to Liverpool, England. The vessel arrived at Beaufort, laden with a miscellaneous cargo, consisting of quantities of tins, various denominations of iron, mackerel, castor oil, two trunks of percussion caps, (about 200,-000,) fish, quicksilver, &c., entered that port,

---

[1] [Reported by Samuel Blatchford, Esq.]

[2] [Reversed by circuit court, in The Gondar, Case No. 5,528.]

and discharged there in the latter part of August, 1861. She took on board a cargo of cotton, turpentine, and other produce of the country, in return, destined for Liverpool, to the owners of the vessel. The master testifies that nothing contraband was on board on the voyage. The vessel cleared at Beaufort, for Liverpool, in September, 1861, but was arrested before her departure. A person from Nassau joined the ship at St. John, as supercargo, and delivered and disposed of the cargo at Beaufort, and did not rejoin the vessel afterwards. The master says that he believed that the cargo taken on board at Beaufort was destined for the owners of the ship, and would have been their property on its arrival at Liverpool. The ship was seized May 2, 1862, in the harbor of Beaufort, North Carolina, by the United States naval forces, after the capture of the place by the army of the United States. The master knew of the war when he sailed for Beaufort, and that Charleston and the southern coast was under blockade. He says he did not know, until the 6th or 7th of September thereafter, that Beaufort was blockaded. The cargo was taken on board at Beaufort, for Liverpool, on the 14th of September, and the vessel took on board. during the same month, at Beaufort, a clearance, export certificates, and a bill of health, from the authority of the secession government, and was moored in that port, ready to sail, and having attempted to do so, and being detained only by the weather or the blockading squadron. On the 27th of May, 1861, a boarding officer of the United States, off Charleston harbor, had indorsed a warning on the ship's papers, that the port of Charleston was under blockade, and the notice, it is testified, might have included all the ports of the southern states. The notice was left in England.

Various facts transpire on the proofs unmistakably condemnatory of the vessel and cargo. First. Prior to this voyage, she had been warned and turned away from the port of Charleston, May 27, 1861, by a United States ship-of-war. The warning was indorsed on her papers and entered in her log, and gave her notice that the coast south of Maryland was under blockade. Second. Notwithstanding such notice, she entered the port of Beaufort, North Carolina, on the 22d of August, 1861, on a pretended voyage from St. John. New Brunswick, to Havana. with a quantity of articles contraband of war on board. Third. She was reladen, at Beaufort, with a full cargo of the produce of that section of the country, and attempted, unsuccessfully, to get out of port with such cargo; and when she was afterwards captured there, she had on board a letter from the British consul at Charleston, dated September 11, 1861, to the British secretary of foreign affairs, apprising that officer that the vessel and cargo were destined to Liverpool, England, and also enemy

documents authenticating her right to leave the port, &c. The illegality of sailing under an enemy license is legal cause for the forfeiture of a neutral vessel. The Julia, 8 Cranch, .[12 U. S.] 181; The Ariadne, 2 Wheat. [15 U. S.] 143, and notes in Appendix.

The violation of the blockade of Beaufort, in entering that port, the taking on board therein an enemy clearance and a cargo, with intent therewith to evade the blockade, and the attempting to carry that design into execution, with the higher and more injurious act of positive hostility against the government of the United States, in carrying into port a large supply of military equipments, afford abundant grounds for the condemnation of the vessel and cargo as prize of war, without adverting to various other facts disclosed in the evidence.

Decree of condemnation and forfeiture of vessel and cargo adjudged.

This decree was, on appeal, and on further proofs, reversed by the circuit court. January 8, 1864, see The Gondar, [Case No. 5,528.]